-PSO-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESSE J. ROBERITES, 09-B-1796,

        Plaintiff,

     -v-                        11-CV-521Sc
                                  **ORDER**

RON HUFF, Jr., KANE, KIM MORAN,
KIMBERLEE LABELL,
MICHAEL P. DOUGHERTY, JOHN M. YORK,
GARY SULLIVAN, MICHAEL O'SHEI,
LIVINGSTON COUNTY SHERIFF DEPARTMENT,
BLAKE ADJUSTER, INC.,
ERIE & NIAGARA INSURANCE ASSOCIATION,
THOMAS E. MORAN and COUNTY OF LIVINGSTON,

        Defendants.



---

### INTRODUCTION

    Plaintiff Jesse J. Roberites, an inmate at the Collins Correctional Facility, has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 9)[1] and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket No. 2).

### DISCUSSION

    Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), his application to proceed *in forma pauperis* is granted.   Section 1915(e)(2)(B) of 28 U.S.C. provides that the

---

[1]Subsequent to the filing of his complaint (Docket No. 1), plaintiff filed a motion to amend (Docket No. 8) and amended complaint (Docket No. 9).   The motion to amend is granted and the amended complaint is thus the operative complaint reviewed in this Order.

Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (I) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.   Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." <u>Abbas v. Dixon</u>, 480 F.3d 636, 639 (2d Cir. 2007) (citing <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004)).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor.  *See* <u>Larkin v. Savage</u>, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); <u>King v. Simpson</u>, 189 F.3d 284, 287 (2d Cir. 1999).  Moreover, "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations." <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 200 (2d Cir. 2004); *and see* <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998).  "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " <u>Abbas</u>, 480 F.3d at 639 (quoting <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir.1983)).  Nevertheless, even pleadings

submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. <u>Wynder v. McMahon</u>, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only ' "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ' " <u>Erickson v. Pardus</u>, 551 U.S.89, 93 (2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); *see also* <u>Boykin v. Keycorp</u>, 521 F.3d 202, 213 (2d Cir 2008) (discussing pleading standard in *pro se* cases after <u>Twombly</u>). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." <u>Abbas</u>, 480 F.3d at 639 (quoting <u>Gomez v. USAA Federal Savings Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam* )).

Plaintiff brings this action principally pursuant to 42 U.S.C. § 1983.[2]  In order to state a claim under § 1983, plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993).

---

[2]While the complaint states that plaintiff's action is brought pursuant to §1983, plaintiff invokes other federal civil rights statutes in his statement of jurisdiction, *e.g.*, 42 U.S.C. §§ 1981, 1985, 1986.  (Complaint, p. 1).

Plaintiff's Claims

Plaintiff's amended complaint (henceforth, "complaint") contains eighteen claims, all relating to the circumstances under which he was investigated and arrested for arson on June 30, 2008 by the Livingston County Sheriff's Department.  While plaintiff asserts a variety of claims against the defendants, a unifying theme of the complaint relates to his allegation that defendants LaBell and O'Shei, representatives of Erie & Niagara Insurance Association ("Insurance Association"),[3] cooperated and conspired with defendant members of the Livingston County Sheriff's Department and defendant Sullivan, New York State Insurance Fraud Bureau investigator, to deprive plaintiff of his constitutional rights.  Plaintiff alleges that the Sheriff's Department and the state Insurance Fraud Bureau investigator (collectively, "the government defendants" defendants used defendants Labell, Blake Adjustors and O'Shei (collectively, "the insurance company defendants") to conduct interrogations of plaintiff, and searches of his property which yielded incriminating statements and other evidence which was then used by the Sheriff's Department to arrest and prosecute plaintiff.  Plaintiff argues that this collusion between the Sheriff's Department, the New York State Insurance Fraud investigator and the Insurance Association's representatives enabled the government to evade having to advise plaintiff of his

---

[3]Plaintiff also names as a defendant Blake Adjustors, Inc. which he alleges defendant LaBell is the owner or employee of.  (Complaint at pp. 2-3).

Miranda rights before interrogating him, and to obtain warrants before searching his home; as stated in the First Claim of the complaint:

> On or about April 16, 2008, it is the plaintiff()
> belief, that acting under color of law, Kimberlee
> LaBell the Insurance Adjustor for Erie & Niagara
> Insurance Association, Gary Sullivan the Insurance
> Fraud Bureau Investigator, and Ron Huff Jr., the
> Investigator of Livingston County Sheriff
> Department, did, along with Blake Adjusters, Inc.
> and Erie & Niagara . . . conspire[] to deprive
> plaintiff() of the protection of the United States
> Constitutional [sic], by Kim LaBell using her
> Official Position as an Insurance Adjustor as a
> facade in agreement with Blake . . . and Erie and
> Niagara . . . and Gary Sullivan.  While acting
> jointly with Ron Huff, Jr. and the Livingston
> County Sheriff Department, by means of gathering
> evidence without a warrant, and interrogation
> without advising plaintiff() of the right to
> counsel.  Which along with seize[d] property that
> was later used to deprive plaintiff() of liberty
> and freedom.

(Complaint, First Claim; see also, Fifth, Seventh, Ninth, Tenth, Eleventh, Thirteenth, Fourteenth and Seventeenth Claims) (repeating, in various ways, allegations of collusion between Sheriff's Department and insurance company representatives).

In addition to the claims that involve or implicate the insurance company defendants, and in effect allege conspiracy to maliciously prosecute plaintiff, plaintiff asserts claims against the government defendants relating to the circumstances of his arrest and subsequent detention including[4]: unlawful interrogation,

---

[4]While plaintiff's complaint contains a caption to each of his claims indicating the nature of the claim or cause of action asserted therein (e.g., false imprisonment, excessive force, due process), it is difficult, with respect

(First Claim), false arrest (Thirteenth Claim) false imprisonment (Second, Fourth and Fourteenth Claims), unlawful search and seizure (First Claim), excessive force (Third, Sixth and Fifteenth Claims), failure to protect (Twelfth Claim) and "municipal liability" or "supervisor liability" against the Sheriff's Department, Livingston County, and supervisors in the Sheriff's Department and with Erie & Niagara Insurance, alleging that they failed to properly train the Sheriff's Department or Insurance Association defendants (Seventh, Eighth, Sixteenth and Eighteenth Claims).

While the complaint does not indicate what transpired after plaintiff's June 30 arrest, the habeas corpus petition Roberites recently filed in this Court, Roberites v. Superintendent Colly, 12-CV-176 (W.D.N.Y., filed Feb. 27, 2012), makes it clear that his

---

to certain claims, to ascertain whether plaintiff is attempting to assert a cause of action or claim other than the one set forth in the caption to the claim. This is so especially because of plaintiff's proclivity for invoking multiple provisions of the Bill of Rights as the constitutional bases for his claims, even when it is obvious that one or more of the amendments cited are not relevant to the facts alleged in a particular claim. Thus, for example, the facts alleged in the Sixth Claim of the complaint, which is captioned "Assault," state an excessive force claim, and plaintiff appropriately invokes the Eighth and Fourteenth Amendments. However, he also invokes the Fourth and Fifth Amendment, even though the facts alleged in the Sixth Claim do not state claims under those amendments. Likewise, plaintiff's Third Claim, labeled "Excessive Force" sets forth facts that are sufficient to state an excessive force claim. But plaintiff also invokes as the constitutional basis for this claim, in addition to the Eighth Amendment, "Equal Protection of the Law, Search and Seizure, Due and procedural process of the law", and "false imprisonment." Another complication is that certain of the characterizations of plaintiff's claims are not supported by the factual allegations which follow. For example, the Sixteenth Claim is labeled "Deliberate Indifference", but the factual allegations which follow make it clear that plaintiff is not asserting an Eighth Amendment deliberate indifference claim against the defendant named therein (Livingston County Sheriff John York), but is instead asserting a claim of supervisory liability, alleging that York's failure to adequately supervise defendants Huff & Moran allowed them to violate his rights. Accordingly, in characterizing and segregating plaintiff's claims below, the Court has been guided by the caption plaintiff has attached to each claim, and the Court's determination of the type of claim or cause of action that the facts alleged in each claim support.

arrest culminated in his conviction, on June 9, 2009, in Livingston County Court on one count of arson in the third degree and one count of insurance fraud in the second degree.   12-CV-176, Docket No. 1, ¶4; *see also* New York State Department of Corrections Inmate Lookup at, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (Jesse J. Roberites, DIN 09-B-1796, convicted in Livingston County of Third Degree Arson and Second Degree Insurance Fraud).   The habeas petition indicates that plaintiff has appealed from the judgment of conviction, and that his appeal to the Appellate Division, Fourth Department, is pending.   12-CV-176, Docket No. 1, ¶ 9.

It is thus clear that plaintiff was convicted of the charges for which he was arrested on June 30, 2008, the event which forms the basis of the instant action.   He is attempting, as stated in his habeas petition, to overturn his conviction on appeal, but his convictions have not yet been invalidated, and given the pendency of his appeal before the Appellate Division, and the possibility of a further appeal to the New York Court of Appeals, it is clear that the ultimate result of his state court challenge to his conviction may not be known for some time—perhaps a year or more.   Therefore, the claims asserted by plaintiff in his complaint which relate to his conviction are premature, and must, as explained below, be either dismissed or stayed pending final resolution of his criminal proceedings.

Heck Delayed Accrual Rule: Claims Impugning Plaintiff's Conviction

The status of the state criminal proceedings becomes significant in light of the Supreme Court decision in Heck v. Humphrey, 512 U.S. 477 (1994).   In Heck, the Supreme Court held that a § 1983 claim for damages must be dismissed if a judgment in favor of a plaintiff would necessarily imply the invalidity of his state court conviction or sentence, unless the conviction or sentence has already been invalidated: "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." 512 U.S. at 486-87[5]; *see also* Wallace v. Kato, 549 U.S. 384, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)((discussing Heck rule of delayed accrual for malicious prosecution claims).   In Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999), *cert. denied*, 528 U.S. 946 (1999), the Second Circuit, in interpreting Heck, ruled that "if success on a

---

[5]The Court's rationale in Heck was stated as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 487.   The Heck delayed accrual rule applies as well to §§ 1981, 1985 and 1986 claims. Amaker v. Weiner, 179 F.3d 48, 51-52 (2d Cir. 1999); Harris v. Clark, 1:11-CV-949 (MAD/RFT), 2011 U.S. Dist. LEXIS 152462, at *6 (N.D.N.Y. Oct. 4, 2011) (citations omitted).

§ 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues to exist." Covington, 171 F.3d at 124 (emphasis added) (internal quotations omitted).

Accordingly, the Court determines that plaintiff's claims for due process, conspiracy to prosecute, obstruction of justice, fabrication of evidence and equal protection (First,[6] Fifth, Tenth, Eleventh and Seventeenth)[7] must be dismissed without prejudice as premature pursuant to Heck because they all seek to impugn the validity of his extant conviction. *See, e.g.,* Nussbaumer v.

---

[6]The First Claim can be construed as asserting a separate interrogation/Fifth Amendment claim, inasmuch as plaintiff alleges that defendant LaBell interrogated him without first advising him of his Miranda rights, the claim cannot form the basis of a § 1983 action. Kneitel v. Danchuk, 04-CV-0971 (NGG)(LB), 2007 U.S. Dist. LEXIS 92378, at *4 (E.D.N.Y. Dec. 17, 2007) (police interrogation claims do not state a claim under § 1983 because Miranda v. Arizona "afford[s] a procedural safeguard rather than a constitutional right.").

[7]Given the Court's dismissal without prejudice of the claims in which plaintiff includes the non-governmental defendants, *i.e.,* the Insurance Association defendants (LaBell, O'Shei) and Blake Adjusters, Inc., there is no need for the Court to consider, at this juncture, whether plaintiff has sufficiently alleged that these private defendants were acting pursuant to state law or in conjunction with state defendants so as to make them liable to suit under 42 U.S.C. § 1983 or other civil rights statutes invoked by the plaintiff. *See, e.g.,* Prowisor v. Bon-Ton, Inc., 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006):

> For a private individual or entity to be deemed to have been acting under color of state law the allegedly unconstitutional conduct of which plaintiff complains must be fairly attributable to the state. Conduct will be "fairly attributable to the state" where there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity. Instead, there must be a sufficiently high level of entanglement between the state and the private actor such that the latter can be considered the state itself.

Nesbitt, 11-CV-6331Fe, 2011 U.S. Dist. LEXIS 117537, at *2 (W.D.N.Y. October 7, 2011)(dismissing as premature, pursuant to Heck, due process, equal protection, malicious prosecution and access to the courts claims related to plaintiff's conviction); Harris v. Buffardi, 1:08-cv-1322 (GLS/DRH), 2011 U.S. Dist. LEXIS 95465, at *30-31 (N.D.N.Y. Aug. 24, 2011) (where plaintiff's conviction had not been overturned or otherwise invalidated, his claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of his conviction—[were] barred.").

### False Arrest, False Imprisonment and Illegal Search and Seizure Claims

With respect to § 1983 false arrest actions, however, the delayed accrual rule of Heck has been limited by the Supreme Court's decision in Wallace v. Kato in holding that the statute of limitations upon a false arrest claim, where the arrest is followed by criminal proceedings, "begins to run at the time claimant becomes detained pursuant to legal process." 549 U.S. 384 Accordingly, the Court in *Wallace* declined to apply the *Heck* rule to false arrest claims, and instructed that:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in

> accord with common practice, to stay the civil
> action until the criminal case or the likelihood
> of a criminal case is ended. If the plaintiff
> is ultimately convicted, and if the stayed civil
> suit would impugn hat conviction, *Heck* will
> require dismissal; otherwise, the civil action
> will proceed, absent some other bar to suit.

*Id.* at 393-94 (citations omitted). *See also* <u>Jovanovic v. Bonilla</u>, 04 CV 8437 (PAC), 2008 U.S. Dist. LEXIS 8974, at *6 (S.D.N.Y. 2008) ("In lieu of allowing the [false arrest] claim to accrue indefinitely, the Supreme Court found it more desirable to force a petitioner to bring a false arrest claim within three years of arraignment (or other commencement of legal process), and to permit the district court faced with the action to stay the matter until any ongoing underlying criminal proceedings were resolved, thus eliminating the possibility of inconsistent judgments.").

The accrual rule for false arrest claims established in <u>Wallace</u>, which applies to claims of false imprisonment, *see* <u>Wallace</u>, 127 S. Ct. at 1095 ("False arrest and false imprisonment overlap; the former is a species of the latter."),[8] has been

---

[8] "A section 1983 claim for false arrest arises under the Fourth Amendment right to be free from unreasonable seizure and is identical to a claim for false arrest under New York law. False arrest and false imprisonment are synonymous under New York law.  To establish a claim for false arrest/false imprisonment, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." <u>Basini v. City of Ne York</u>, 11 Civ. 3022 (SAS), 2011 U.S. Dist. LEXIS 3022, at *9 (S.D.N.Y. Dec. 14, 2011) (quoting <u>Savino v. City of New York</u>, 331 F.3d 63, 75 (2d Cir. 2003) (internal citations omitted).

extended to illegal search and seizure claims as well. *See, e.g.,* Dominguez v. Hendley, 545 F.3d 585, 2008 U.S. App. LEXIS 20577 at *589 (7th Cir. 2008) ("Fourth Amendment claims for false arrest or unlawful searches accrue at the time of (or termination of) the violation"); Johnson v. Dossey, 515 F.3d 778, 781 - 82 (7th Cir. 2008) (distinguishing between claims that accrue when a litigant first appears before a magistrate, controlled by Wallace, and claims that arise during the legal process (controlled by Heck)); Mallard v. Potenza, 94-CV-223 (CBA), 2007 U.S. Dist. LEXIS 86336 at *10, (E.D.N.Y. 2007) ("[T]he Court fails to see any reasoned basis to distinguish between claims for false arrest and search and seizure, and therefore holds that *Wallace* applies with equal force to a claim for an illegal search and seizure.")(citations to cases holding that the accrual rule of Wallace applies to search and seizure claims omitted).

   To the extent that (I) plaintiff sets forth potentially viable claims which accrue prior to a favorable termination ruling and (ii) plaintiff's underlying conviction is not final, to preserve such claims from expiring, the Court may exercise its discretion to grant a stay until a favorable termination has either been obtained or is no longer available. *See* Wallace v. Kato, 549 U.S. at 393-94(citations omitted)("lf a plaintiff files a false-arrest claim before he has been convicted.... it is within the power of the district court ... to stay the civil action until the criminal

case ... is ended. ... If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."); Gibson v. Superintendent of N.J. Dep't of Law and Public Safety-Div. of State Police, 411 F.3d 427, 451 (3d Cir. 2005) (where claim would impugn the only evidence supporting conviction, *Heck* applies and claim must be deferred until the conviction is overturned); Nussbaumer, 2011 U.S. Dist. LEXIS 117537, at *6 (Where plaintiff's appeal of his conviction was pending, false arrest and search and seizure claims that would impugn his conviction were stayed pending final resolution of criminal proceedings); Jackim v. City of Brooklyn, No. 05-1678, 2010 U.S. Dist. LEXIS 125382 at *3, (N.D. Ohio Nov. 29, 2010)(allowed stay of *Heck*-barred claim until plaintiff exhausted appeals in criminal case); Crooker v. Burns, No. 06-30187, 2010 U.S. Dist. LEXIS 99705 at *2, (D. Mass. Sept. 21, 2010)(stayed *Heck*-barred claims until completion of criminal case, including any appeal thereof); Smart v. Township of Gloucester, No. 06-138, 2007 U.S. Dist. LEXIS 29266 at *7, (D.N.J. Apr. 20,2007)(recognizing that a stay necessitated under *Heck/Kato* may extend for years while post-conviction relief of the criminal conviction at issue is sought).

Though it is possible that upon final determination of plaintiff's appeal the Courts may find the allegedly improper

searches and seizures were not inextricable from plaintiffs criminal conviction, and thus escape the Heck bar, conservation of judicial resources makes it prudent that a single determination as to the applicability of Heck be made at the conclusion of all criminal proceedings. Thus, the Court will stay plaintiffs false arrest, false imprisonment and illegal search and seizure claims (Second, Fourth, Ninth,[9] Thirteenth and Fourteenth Claims) pending final resolution of his criminal proceedings, or success in overturning his conviction. Because the state court proceedings could take some time, plaintiff is directed to contact the Court to inform as to the status of his criminal charges every six months. Following the conclusion of the state criminal case, plaintiff must apply to the Court within 30 days to restore the case to the active calendar by sending a letter to the Court seeking such relief.

Supervisory Liability Claim

The Seventh Claim of the complaint asserts claims of supervisory liability against defendants Moran, LaBell and O'Shei. The claim incorporates the allegations against these defendants made in the First through Sixth Claims of the complaint, but then adds that they were "'grossly negligent' in that they did not adequately supervise the subordinate(s) who violated plaintiff(s)

---

[9]While the Ninth Claim of the complaint is captioned "Fraudulent Concealment" the factual allegations state an unlawful search and seizure claim ((i.e., that defendant LaBelle, concealing her identity as a "quasi-law enforcement agent" assisting the Livingston County Sheriff's Department, searched and seized property from plaintiff's home without a warrant).

rights."   The Sixteenth Claim asserts a similar claim against defendant John York, the Sheriff of Livingston County.

A plaintiff cannot "'base liability solely on [the defendant's] supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." Houghton v. Cardone, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) (quoting Burgess v. Morse, 259 F. Supp. 2d 240, 248 (W.D.N.Y. 2003)). In other words, the conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without supporting factual allegations, is not sufficient to state a claim under § 1983. Houghton, 295 F. Supp. 2d at 276-77 ("All that plaintiff has done here is assert the conclusion that [the supervisory official] was personally involved, with no supporting factual allegations. That is not enough.") (emphasis original); Covington v. City of New York, 916 F. Supp. 282, 289-90 (S.D.N.Y. 1995) (dismissing claim against New York County District Attorney because plaintiff "failed to sufficiently allege facts from which the Court can infer that [defendant] failed to train his employees").

Here the plaintiff's allegations of supervisory liability with respect to defendants Moran, LaBell and Oishei are entirely conclusory; he does not, for instance, identify the "subordinates" that they allegedly failed to supervise. The claims are therefore dismissible, and ordinarily, the Court would give plaintiff, as a

*pro se* litigant, leave to amend. However, in the instant matter, the Court finds that the supervisory liability claims are superfluous, because plaintiff has asserted personal involvement of the defendants with respect to the claims on which he seeks to add supervisory liability. Accordingly, the claims asserted in the Seventh Claim of the complaint will be dismissed.

With respect to the supervisory liability claim against Sheriff York, however (Sixteenth Claim), the Court will allow that claim to go forward to the extent that the Court will direct herein that plaintiff's claims against the Sheriff's Department defendants which are not subject to the delayed deferral rule of <u>Heck</u> may go forward, *see* discussion *infra*.

<u>Municipal Liability Claims</u>

The Eighth and Eighteenth Claims of the complaint seek to assert "municipal liability" against the Livingston County Sheriff's Department and Livingston County, respectively, for the alleged violations of plaintiff's rights by the Sheriff's Department employees who are defendants to this action. Plaintiff alleges that the defendants in essence failed to properly train and discipline their employees, defendants Huff, Moran, Kane, Dougherty and York.

The Livingston County Sheriff's Department is an administrative arm of the County, without a legal identity separate and apart from the County, and thus lacks the capacity to be sued.

*See, e.g.,* <u>Adesola v. County of Nassau Sheriff's Dept</u>, 12-CV-1026(JS)(GRB) 2012 U.S. Dist. LEXIS 36911, at *7 (E.D.N.Y. Mar. 13, 2012). Accordingly, plaintiff's Eighth Claim is dismissed.

As to plaintiff's claim against Livingston County, the complaint alleges only that the County "indirectly" failed to establish proper training policy for their supervisors and subordinates "and/or had a policy" but properly failed to train them and failed to discipline them with respect to their violations of plaintiff's rights.

Municipalities are considered "persons" for" purposes of section 1983 claims. However, municipalities may not be held vicariously liable for the actions of their employees, and a claim against a municipality must therefore be premised on the theory that the municipality maintained a policy, practice, or custom that caused the plaintiff's constitutional injury. *See* <u>Monell v. New York Dep't of Soc. Servs.</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).; *see also* <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). The plaintiff must allege a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" <u>Abreu v. City of New York</u>, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (quoting <u>Harris</u>, 489 U.S. at 385). "[A] plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its

employees." *Id.* (citing <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 127-30 (2d Cir. 2004)); <u>Lichtenthal v. County of Erie</u>, 06-CV-723A, 2009 U.S. Dist. LEXIS 82945, at *15 (W.D.N.Y. Aug. 20, 2009)("A policy, custom, or practice of the municipal entity may be inferred where 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' (quoting <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 226 (2d Cir.2004)(internal quotation marks omitted)..

In the context of a motion to dismiss, "[t]o allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." <u>Missel v. County of Monroe</u>, 351 Fed. Appx. 543, 545 (2d Cir. Nov. 4, 2009) (citing <u>Vives v. City of New York</u>, 524 F.3d 346, 350 (2d Cir. 2008); *see also* <u>Iqbal</u>, 129 S. Ct. at 1951; <u>Twombly</u>, 550 U.S. at 555. "Mere 'boilerplate' assertions that a municipality has such a custom or policy, which resulted in a deprivation of the plaintiff's rights, do not rise to the level of plausibility." <u>Simms v. City of New York</u>, 10 CV 3420 (NGG)(RML), 2011 U.S. Dist. LEXIS 106262, at *6 (E.D.N.Y. May 19, 2011) (citations omitted).

Plaintiff's allegations of municipal liability against Livingston County amount to "mere 'boilerplate'", unaccompanied by any factual allegations that would "support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel, 351 Fed. Appx. At 545. Plaintiff's Eighteenth Claim is thus dismissible. While the Court would ordinarily afford plaintiff the opportunity to file an amended complaint, in which he could plead additional facts supporting his claim, the Court notes that the claim appears to relate for the most part to the claims against the individual Sheriff's Department defendants that are being dismissed as premature under Heck, see discussion supra. Therefore, if plaintiff refiles his claims against those defendants if he succeeds in invalidating his conviction, he may wish to include his municipal liability claim, accompanied by appropriate factual allegations.

## CLAIMS THAT MAY GO FORWARD

The remaining claims of the amended complaint, viz., the excessive force claims asserted in the Third, Sixth and Fifteenth[10]

---

[10]The excessive force claim asserted in the Fifteenth Claim under the misleading caption "Mental Suffering and Emotional Distress," which clearly relates to the excessive force claims asserted in the Third and Sixth claims, can go forward against the government defendants named therein (Dougherty, Kim Moran, Huff, Jr. And Kane) but is dismissed as to defendant LaBell, as to which it fails to state a claim.

Claims of the amended complaint, the failure to protect claim asserted in the Twelfth Claim of the amended complaint, and the Sixteenth Claim of the amended complaint, to the extent it asserts supervisory liability with respect to the actions alleged in the Third, Sixth, Twelfth and Fifteenth Claims of the amended complaint may go forward and be served.

### PLAINTIFF'S MOTIONS

Plaintiff has moved for the appointment of counsel (Docket No. 3). A more fully developed record will be necessary before the Court can determine whether plaintiff's chances of success warrant the appointment of counsel. Therefore, plaintiff's motion is denied without prejudice to its renewal at such time as the existence of a potentially meritorious claim may be demonstrated. See Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997) (when determining whether to appoint counsel, the Court must first look to the "likelihood of merit" of the underlying dispute).

Plaintiff's motion for leave to file an amended complaint (Docket No. 8), though unnecessary, is granted, the Court having determined that the amended complaint filed with the motion to amend (Docket No. 9) shall be the operative complaint in this action.

Plaintiff's motion for an extension of time to amend and serve summonses (Docket No. 10) is denied without prejudice as premature.

## CONCLUSION

Plaintiff's request to proceed as a poor person (Docket No. 2) is granted.  Plaintiff's application for the appointment of counsel (Docket No. 3) and his motion for an extension of time to amend and serve the summons (Docket No. 10) are denied without prejudice. Plaintiff's motion to amend his complaint (Docket No. 8) is granted and the operative complaint in this matter shall be plaintiff's proposed amended complaint (Docket No. 9).

For the reasons set forth above, the claims asserted in the First, Fifth, Tenth, Eleventh and Seventeenth Claims of the amended complaint are dismissed as premature without prejudice to refiling once the criminal charges to which they relate are resolved.

The false arrest, false imprisonment and search and seizure claims asserted in the Second, Fourth, Ninth, Thirteenth and Fourteenth Claims of the amended complaint are stayed, pending final resolution of plaintiff's criminal conviction.

The Seventh Claim of the Complaint, asserting supervisory liability against defendants Kim Moran, LaBell and O'Shei, is dismissed with prejudice.

The Eighth and Eighteenth Claims of the amended complaint, asserting supervisory liability against the Livingston County Sheriff's Department and Livingston County, are dismissed with prejudice.

The excessive force claims asserted in the Third, Sixth and Fifteenth Claims[11] of the amended complaint, the failure to protect claim asserted in the Twelfth Claim of the amended complaint, and the Sixteenth Claim of the amended complaint, to the extent it asserts supervisory liability with respect to the actions alleged in the Third, Sixth, Twelfth and Fifteenth Claims of the amended complaint may go forward and be served.

### ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff's motion for the appointment of counsel is denied without prejudice;

FURTHER, that plaintiff's motion to amend his complaint is granted, and the amended complaint shall be the operative complaint in this action;

FURTHER, that plaintiff's motion for an extension of time to amend and serve the summons is denied without prejudice;

FURTHER, that the claims asserted in the First, Fifth, Tenth, Eleventh and Seventeenth Claims of the amended complaint are dismissed as premature without prejudice;

---

[11]As explained above, the excessive force claim asserted in the amended complaint is dismissed with respect to defendant LaBell.

22

FURTHER, that the claim asserted in the Seventh, Eighth and Eighteenth Claims of the amended complaint are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate Gary Sullivan, Michael O'Shei, the Livingston County Sheriff's Department, Blake Adjuster, Inc., Erie & Niagara Insurance Association, Thomas E. Moran and the County of Livingston as defendants to this action;

FURTHER, that the false arrest, false imprisonment and search and seizure claims asserted in the Second, Fourth, Ninth, Thirteenth and Fourteenth Claims of the amended complaint are stayed, pending final resolution of plaintiff's criminal conviction;

FURTHER, that plaintiff's claims of excessive force asserted in the Third, Sixth and Fifteenth Claims (with the exception of the claim asserted against defendant LaBell in the Fifteenth Claim) of the amended complaint, his failure to protect claim asserted in the Twelfth Claim of the amended complaint, and the supervisory liability claim asserted in the Sixteenth Claim of the amended complaint, to the extent it asserts supervisory liability with respect to the actions alleged in the Third, Sixth, Twelfth and Fifteenth Claims of the amended complaint, may go forward and be served upon the defendants named therein;

FURTHER, that the Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, Amended Complaint (Docket No. 8), corrected page 5 of the Amended Complaint (Docket No. 11) and this Order upon defendants Kane, Kim Moran, Michael P. Dougherty, John M. York and Ron Huff, Jr., without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the amended complaint once it has been served upon them.

**SO ORDERED.**

S/ Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:      March 28, 2012
            Rochester, New York